IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ALONZO MARTELL JENKINS, SR., ) | Civil Action No. 3:13-0274-DCN-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| TIM RILEY; ) | |
| MIRIAM MIDDLEBROOKS; ) | |
| GEORGE BOBO; AND ) | |
| CHRISTINA THOMPSON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on January 30, 2013.[1] He is an inmate at the Tyger River Correctional Institution ("TYRCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff appears to allege claims under 42 U.S.C. § 1983 for violations of his constitutional rights. Defendants are TYRCI Warden Tim Riley ("Riley"), and TYRCI employees Myra Middlebrooks ("Middlebrooks"), George Bobo ("Bobo"), and Christina Thompson ("Thompson"). On September 19, 2013, Defendants filed a motion to dismiss. Plaintiff, because he is proceeding pro se, was advised on September 20, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion to dismiss could result in the dismissal of his complaint. Plaintiff failed to respond and the undersigned issued an order on October 13, 2011, allowing Plaintiff an additional fifteen days to respond. Plaintiff did not respond.[2]

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(e) DSC. Because this a dispositive motion, this Report and Recommendation is entered for review by the court.

[2]It is recommended that Defendants' motion to dismiss be granted as discussed below. Alternatively, it is recommended that this action be dismissed pursuant to Federal Rule 41(b) for
(continued...)

**STANDARD FOR MOTION TO DISMISS**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[2](...continued)
Plaintiff's failure to prosecute. A complaint may be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990); Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:
  (1)   the degree of plaintiff's responsibility in failing to respond;
  (2)   the amount of prejudice to the defendant;
  (3)   the history of the plaintiff in proceeding in a dilatory manner; and
  (4)   the existence of less drastic sanctions other than dismissal.
Davis v. Williams, 588 F.2d 69 (4th Cir. 1978). In Ballard, the Fourth Circuit found that the Magistrate Judge's prior explicit warning that a recommendation of dismissal would result from the plaintiff failing to obey his order was proper grounds for the district court to dismiss suit when the plaintiff did not comply despite warning. Ballard v. Carlson, 882 F.2d at 95.

In the present case, Plaintiff is proceeding pro se so he is entirely responsible for his actions. It is solely through Plaintiff's neglect, and not that of an attorney, that no responses have been filed. Plaintiff has not responded to Defendants' motion to dismiss, or the Court's orders requiring him to respond. No other reasonable sanctions are available.

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

## **DISCUSSION**

Plaintiff alleges that Defendants violated his right of access to the courts and his due process rights by denying him "legal supplies." He requests "punitive, actual, and emotional and mental damages in the amount of [$]750,000." ECF No. 1 at 5.  Defendants contend that their motion to dismiss should be granted because: (1) Plaintiff failed to effect proper service upon them;[3] (2) Plaintiff failed to exhaust his administrative remedies as to his allegations against Defendants Riley, Bobo, and Thompson prior to filing suit; (3) the Eleventh Amendment bars Plaintiff's claims; (4)

---

[3]Defendants contend that Plaintiff failed to timely serve them pursuant to Federal Rule 4(m) because they were served more than 120 days after Plaintiff brought his case into proper form and the Court authorized service of process.  Here, Plaintiff is proceeding in forma pauperis. In forma pauperis plaintiffs must rely on the district court and the U.S. Marshals Service to effect service of process according to 28 U.S.C. § 1915. See 28 U.S.C. § 1915(d); Fed.R.Civ.P. 4(c)(3). Thus, there may be good cause the delay in service in this case. See Graham v. Satkoski, 51 F.3d 710, 713 (7th Cir.1995) ("The prisoner may rely on the Marshals Service to serve process, and the Marshals Service's failure to complete service is automatically 'good cause' to extend time for service under Rule 4(m)."). As the undersigned recommends that this action be dismissed for other reasons, this argument will not be addressed at this time.

Plaintiff failed to state a claim for denial of access to the courts; (5) Plaintiff failed to state a claim for supervisory liability against Defendants Riley, Bobo, or Thompson; and (6) Defendants are entitled to an order dismissing his complaint as a matter of law.

1.  Administrative Remedies

Defendants Riley, Bobo, and Thompson contend that their motion to dismiss should be granted because Plaintiff failed to exhaust his administrative remedies as to his allegations against them prior to filing this action. In his complaint, Plaintiff appears to assert that he exhausted his administrative remedies in grievance number TYRCI 11039-11, a copy of which he attached to his complaint. Defendants provide that Plaintiff filed many Step 1 grievances, but has only exhausted his administrative remedies with regard to grievance number TYRCI 11039-11. See Ann Hallman Aff.[4]

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The

---

[4] Hallman states that she is the Inmate Grievance Branch Chief for SCDC and that she has searched SCDC's automated System and log of appeals for grievances filed by Plaintiff related to his receipt of legal supplies at TYRCI. She provided copies of those grievances, and indicates that, other than grievance number TYRCI 11039-11, Plaintiff's grievances were either resolved, were rejected for various reasons and not re-filed by Plaintiff, were not taken to Step 2 of the grievance process, are still pending, or were not appealed to the Administrative Law Court. Hallman Aff., ECF No. 18-4. Plaintiff, who did not respond to Defendants' motion to dismiss, has presented nothing to dispute these assertions.

Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.[5]

Plaintiff has only shown that he exhausted his administrative remedies as to the allegations in his complaint as to the alleged actions by Middlebrooks. In his Step 1 grievance, he claimed that he requested legal supplies from Middlebrooks, on June 30 and July 12, 2011, but did not receive them. He mentions Defendant Bobo and appears to mention Defendant Thomson (referring to IGC) in the Step 1 grievance, but failed to pursue any claims against them in his Step 2 grievance. Plaintiff did not mention Defendant Riley in his Step 1 grievance, and in the Step 2 grievance merely disputes the Warden's response to his grievance (arguing that although the Warden stated that Thompson provided legal supplies to Plaintiff on July 12, 2011, the supplies were provided by Middlebrooks on July 15, 2011). See ECF No. 1-1.

---

[5]Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility with a "Step 2 Grievance."

5

2.      Access to the Courts

Plaintiff alleges that he requested legal supplies from Middlebrooks on June 30, 2011 and July 12, 2012,[6] to respond to legal matters that were pending. Plaintiff claims that both of these requests went unanswered until after his deadline passed. Plaintiff alleges that Inmate Grievance Coordinator Thompson failed to insure that supplies were properly provided to him. He claims he verbally requested Lt. Bobo to remind Middlebrooks of his approaching deadline to insure she provided the necessary items. Additionally, Plaintiff claims that TYRCI Warden Riley was notified through requests to staff members and grievances about his conflicts with receiving proper supplies from Middlebrooks, but failed to remedy the situation (brushing it off and covering it up). He alleges that Riley's actions led up to his missing his deadline. Defendants contends that Plaintiff fails to state a claim for access to the courts because he fails to plead facts to allege an actual injury to his right of access to the courts as required under controlling law.[7]

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions

---

[6] The July 12, 2012 date appears to be a clerical error, as Plaintiff asserts in his Step 1 grievance that his second request for supplies was on July 12, 2011.

[7] Although Plaintiff mentions "due process" as a basis for his claims (ECF No. 1 at 2), it is unclear what due process allegation he has alleged. To the extent that he alleges a claim for due process concerning the processing of his grievances, access to the grievance system, or that Defendants' actions violated an SCDC policy, he fails to state a claim. Access to administrative remedies is not itself a constitutionally protected right. See Adams v. Rice, 40 F.3d 72 (4th Cir.1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). Allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

6

and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996).

Plaintiff alleges that he missed a deadline in a case. He has not, however, alleged sufficient facts to allege an actual injury to his right of access to the courts. Plaintiff does not identify the nature of his legal matter (such as if it was a direct or collateral attack on his sentence, a challenge to his conditions of confinement, or some unrelated matter). He does not provide anything to show what deadline he missed or how missing the deadline adversely affected his legal matter. Plaintiff has not asserted any facts alleging that his claim is not frivolous or that it was of at least arguable merit such that its loss might cause injury to him. See Lewis v. Casey, 518 U.S. 343, 353 & n. 3 (noting that an inmate's claim must be non-frivolous and of at least arguable merit for its loss to cause injury). Thus, Plaintiff fails to plead sufficient facts to state a claim for denial of access to the courts.

3.     Supervisory Liability

Defendants Riley, Bobo, and Thompson contend that Plaintiff fails to state a claim against them based on a theory of supervisory liability. Defendant Riley contends that Plaintiff merely alleges that Defendant Middlebrooks was responsible to provide legal supplies to inmates in SMU, and does not assert that he (Riley) knew about Plaintiff's alleged deadline, failed to provide legal materials, or established a policy or practice of denying legal materials to inmates. Defendants Bobo and Thompson argue that Plaintiff fails to allege that either of them supervised Middlebrooks or were responsible for providing Plaintiff legal supplies.

Plaintiff cannot show that Defendants Riley, Bobo, or Thompson are liable under a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

A plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994). In this action, Plaintiff has not alleged that Defendants Bobo or Thompson were supervisors of Defendant Middlebrooks. Plaintiff appears to claim Defendant Riley had knowledge that he was having a problem obtaining legal materials from Middlebrooks merely because Riley responded to the grievance(s). Plaintiff has not alleged any causal link as he has not asserted that Defendant Riley knew of Plaintiff's alleged deadline or had a policy or practice of denying materials to inmates. He has not alleged that Defendants Riley, Bobo, and/or Thompson had actual or constructive knowledge that their subordinates were engaged in conduct that posed a "pervasive and unconstitutional risk" of injury to Plaintiff. Additionally, Plaintiff has not shown any affirmative casual link between these Defendants' actions or inactions

8

and his alleged injury. Thus, Plaintiff has not shown any basis for supervisory liability on the part of Defendants Riley, Bobo, and/or Thompson.

    4.    <u>Eleventh Amendment Immunity</u>

Defendants contend that the Eleventh Amendment bars Plaintiff's claims to the extent they are sued in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

9

**CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion to dismiss (Doc. 18) be granted or in the alternative that this action be dismissed for Plaintiff's failure to prosecute.

Joseph R. McCrorey
United States Magistrate Judge

December 10, 2013
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).